21 U.S. 495 (____)
8 Wheat. 495
DALY'S Lessee
v.
JAMES.
Supreme Court of United States.

*500 Mr. Wheaton, for the plaintiff.
Mr. Sergeant, contra.
*531 Mr. Justice WASHINGTON delivered the opinion of the Court; and, after stating the case, proceeded as follows:
The material question to be decided is, whether the power given to A. Young, his executors and administrators, to sell the real estate of the testator, was legally exercised? If it was not, then the plaintiff in error, who claims under a sale made by the executor of Young, acquired no title under it, and the judgment below is right.
It was contended by the counsel for the defendant, that by the death of Young, as well as of the brothers and sisters of the testator, in the lifetime of John Bleakley, the son, the devises to them to arise out of the power to sell never took effect; and, consequently, there being no person in existence, at the death of the son, to receive the proceeds of the sale, or any part of them, the power was unduly exercised. The premises upon which the above argument is founded, as well as the conclusion drawn from them, being controverted by the counsel on the other side, our inquiries will be confined to those two points.
With respect to the devise of the 400 pounds to A. Young, a majority of the Court is of opinion, that by the words, as well as from the obvious intention of the testator, that sum was not to be raised except in the event of the death of John *532 Bleakley, the son, without issue, in the lifetime of Young. During the joint lives of the son, or his issue, and Young, the latter was to receive an annuity of 30 pounds out of the rents and profits of the real estate. But if the son should die without issue in the lifetime of the said Young, the annuity was, in that event, to cease, and the 400 pounds was to be raised for his use, out of the proceeds of the real estate, when the same should be sold, according to the intention of the will, as thereafter mentioned. The contingency on which the devise of the 400 pounds was to take effect, is in no respect connected with that on which the devise of the proceeds to the brothers and sisters was to depend. The 400 pounds is expressly given in lieu of the annuity, in case Young should survive the son, without issue, in which event it was to cease.
The contingency upon which the devise of the proceeds of the real estate to the brothers and sisters was to take effect, was the death of the son without issue; and since it was possible that the particular estate of the son might endure beyond the life of Young, the power to sell, for the benefit of the brothers and sisters, is extended to his executors and administrators. It is true, that by the clause which gives the power to sell, taken independent of the devise to Young, it would seem as if the 400 pounds was, at all events, to be first deducted out of the proceeds of the sale, and paid to him, in the same event as the residue was to be paid to the brothers and sisters, that is, on the death of the son without issue. But the *533 two clauses must of necessity be taken in connexion with each other, the one as containing the bequest to Young, and the contingency upon which it was to take effect; and the other, as pointing out the fund out of which it was to be satisfied. If the former never took effect, it is clear that the latter was relieved from the burthen imposed upon it.
A very good reason appears for making the devise of the 400 pounds to Young, to depend upon his surviving the son without issue, since it would be in that event only that he would want it; the annuity, which it was intended to replace, continuing until that event happened. But no reason is perceived why the devise over to the brothers and sisters of the testator, or the execution of the power for their benefit, should have been made to depend on the same event; a trustee to sell being provided in the executors of Young, in case he should die before the power could be executed.
Having shown, it is believed, that the devise of the 400 pounds to Young never took effect, in consequence of his death in the lifetime of John Bleakley, the son, it becomes important to inquire, whether the devise to the brothers and sisters of the testator failed, in consequence of their having all died in the lifetime of the son. The operative words of the will are, "I give the proceeds thereof [of his real estate] to my said brothers and sisters, and their heirs, for ever, or such of them as shall be living at the decease of my son, to be divided *534 between them in equal proportions, share and share alike."
The Court has felt considerable difficulty in construing the above clause, with a view to the intention of the testator, to be collected from the whole of the will, and of the circumstances stated in the special verdict. Some of the Judges are of opinion, that the devise is confined, both by the words and by the apparent intention of the testator, to the brothers and sisters who should be living at the death of the son without issue, considering the word "heirs" as a word of limitation, according to its general import, and that there is no evidence of an intention in the testator to give the part of a deceased brother or sister to his or her children, which ought to control the legal meaning of that word, when used as it is in this clause. On the contrary, they think, that the use of it in the devise of the proceeds of the real estate, and the omission of it in the devise of the personal estate, and yet declaring that the latter is to be divided amongst his brothers and sisters, with the proceeds of his real estate as therein before directed to be divided, strongly indicates the intention of the testator to give the proceeds of the real estate to the same persons who were to take the personal estate. Others of the Judges are of opinion, that an intention to give the proceeds of the real estate to the children of a deceased brother or sister, as representing their ancestor, is fairly to be collected from the will, which strongly intimates that the testator did not *535 mean to die intestate, as to any part of his real or personal estate.
Upon a question of so much doubt, this Court, which always listens with respect to the adjudications of the Courts of the different States, where they apply, is disposed, upon this point, to acquiesce in the decision of the Supreme Court of Pennsylvania, in the case of Smith's lessee v. Folwell, (1 Bin. 546.) that the word heirs is to be construed to be a word of limitation, and, consequently, that the devise to the brothers and sisters failed to take effect by their deaths in the lifetime of the son.
Whether the conclusion to which that Court came, and which was pressed upon us by the plaintiff's counsel, that the contingencies on which the power to sell was to arise, having never happened, the sale under the power was without authority, is well founded in a Court of law, need not be decided in this case, because the majority of the Court are of opinion, that, by the express words of the will, the sale was limited to the period of two years after the decease of John Bleakley, the son. The circumstance of time was no doubt considered by the testator as being of some consequence, or else it is not likely that he would so have restricted the exercise of the power. But whether it was so or not, such was the will and pleasure of the creator of the power, and that will could only be fulfilled by a precise and literal exercise of the power. The trustee acts, and could act, only in virtue of a special authority conferred upon him by the will; he must act, then, in the way, *536 and under the restrictions which accompany the authority. If an adjudication were wanted to sanction so plain and obvious a principle of law, it is to be found in a case reported in the Year Book, 15 Hen. VII. 11, 12.
Under what circumstances a Court of equity might relieve, in case the trustee should refuse to exercise the power within the prescribed period, or should exercise the same after that period, need not be adverted to in this case, since this is a question arising in a case purely at law.
The sale in this case, then, having been made about eighteen years after the death of John Bleakley, the son, the trustee acted without authority, and the sale and conveyance was absolutely void at law.
Mr. Justice JOHNSON. I have no hesitation in conceding, that if all the objects had failed, for which the power in this will was created, the power itself ceased, both at law, and in equity. Those objects were,
1. The raising of the legacy of 400 pounds for Young.
2. The sale and distribution of the testator's estate among his own relatives.
If neither of these objects remained to be effected, the power, under which the plaintiff makes title, was at an end.
The words on which the legacy depends are these: "but in case of the decease of my said son, without issue, as aforesaid, in the lifetime of the said Archibald Young, then the said annuity is to *537 cease; and in lieu thereof, I give and bequeath unto the said A.Y., and his assigns, the sum of 400 pounds sterling, payable out of the proceeds of my real estate, when the same is sold and disposed of according to the intention of this my will herein after mentioned, and before any dividend is made of my said estate."
The question which this clause presents is, whether the legacy was given upon the single contingency of the son's death without issue, or upon the double contingency of his death without issue, in the lifetime of A.Y.
This question appears to me to be settled by the testator himself; for in a subsequent part of the will, speaking of this same legacy, and of course with reference to the clause bequeathing it, he says, "the sum of 400 pounds sterling, herein before given and bequeathed to the said A.Y., immediately on the decease of my said son without issue." The testator, then, has attached this construction to his own words; and that the clause containing this bequest will well admit of that construction is obvious; for there is no necessity for joining the first member of the sentence, which contains the double contingency, to the last member, which contains the bequest. And the effect of the will, without this connexion, (which I cannot but think forced and unnecessary,) will be, to give the pecuniary legacy absolutely on the event of the son's death without issue, but at the same time to declare, that the annuity should no longer run on, whenever this bequest took effect. This would literally be giving it in lieu of the annuity, *538 and would fully satisfy those words in the will.
Indeed, this construction appears irresistible, when we consider another part of the will.
The power to sell is extended to the executors and administrators of A.Y. They, therefore, were authorized to sell, in the event of the death of the son without issue, although he should survive A.Y. Yet, we find the testator, when obviously contemplating the event of the son's surviving Young, expressly directing the payment of this legacy, before the proceeds should be distributed among his devisees over. This could only be consistent with a bequest upon the single contingency of the son's death without issue, independently of Young's survivorship.
Nor is there the least ground for contending, that this bequest is upon a contingency too remote, since the sale and devise over are expressly limited to take effect upon the death of the son, thereby restricting the generality of the words issue and heirs, so as to mean issue living at his death. This, too, is consistent with those acknowledgments of the testator of a debt of gratitude to A.Y., and not only of a debt to accrue, but of a subsisting debt. The annuity is given in presenti; and so is its substitute, the legacy. The words are, "I give and bequeath," thus vesting a present interest, although the payment is deferred to a future time and event. The views of the testator are easily explained: if his son or his issue took the estate, his bounty to Young was to be limited to the annuity. But if it should go over to his collateral *539 kindred, the testator enlarges his bounty, and gives this substitute for the annuity, at the same time that he frees his estate from a charge that would embarrass the sale.
Nor can I possibly admit the doctrine, that the power to sell was either at law, or in equity, limited to the duration of two years after the death of the son without issue. The words are, "then I direct and order my said cousin, A.Y., his executors and administrators, to sell and dispose of my real estate within two years after the decease of my said son." Here the words are clearly imperative, and their effect is, both to confer the power generally, and to exact the execution of it in two years. The intention of the testator must prevail, both at law and in equity, in construing his words; and when they will admit of a construction which will make the power commensurate with the views of the testator in creating it, I hold that to be the true construction both in law and equity. It is only when the power given admits not of this latitude by construction, that the aid of Courts of equity is resorted to, in order to carry into effect the views of the testator. By possibility, the executors of A. Young may have been minors, or may not have proved his will until the two years had expired, or a sale during that time may have been stayed by injunction, or by the want of purchasers; and it would be difficult to show why, in any one of these events, the power should have ceased. Certainly no reason can be extracted from the provisions of the will, whence an intention could be inferred to restrict the power to sell to the *540 period of two years. Every thing favours the contrary conclusion. For whose benefit was this injunction to sell within the specified period imposed upon the executor? Clearly for that of the brothers and sisters, in order that, under it, they may have compelled the executor to proceed to sale within the time limited. It would be strange, then, if a provision so clearly intended for their interests, should have put it in the power of the executor, either wilfully, or by laches, to defeat their interests, and let in the heir at law.
This is not the case of a mere naked power: it is a power coupled with a trust. The executor was to sell, that he might possess himself of the value in money, and distribute it among the cestuis que trust. In such cases, it has been well observed, that "the substantial part is to do the thing," and that "powers of this kind have a favourable construction in law, and are not resembled to conditions, which are strictly expounded."
I am, therefore, of opinion, that the words creating this power will well admit of being construed into a general devise of the power, and that the object intended to be answered, necessarily requires that construction.
The dictum cited from the Year Books, therefore, (besides that it has not been very correctly translated,) has no application to this case; since it supposes the actual restriction under the will, which I deny to be imposed in the present instance, upon the true construction of its words.
Being, therefore, of opinion, that both the legacy to Young, and the power to sell, subsisted *541 at the date of the sale to the plaintiff, these views of the case are sufficient to sustain the sale to the plaintiff; and the subsequent questions would arise, only upon the distribution of the remainder of the purchase money, after satisfying the legacy. Nevertheless, I will make a few remarks upon that part of the will which relates to the devise over to the testator's family, since it serves to elucidate, by another application, the principle upon which I have formed my opinion respecting the legacy to A. Young.
On the subject of the devise over to his brothers and sisters, the testator has again been his own expositor. It is very clear, that if the words, "or such of them as shall be living at the decease of my said son," stood alone and unexplained, the relative them might be applied grammatically with more propriety to the word "heirs," than to the words "brothers and sisters;" and thus, perhaps, give those words the effect of words of purchase. But the testator himself gives these words a distinct application, in the latter part of his will, when disposing of his personal estate; concerning which he says, that it shall be "divided among my brothers and sisters, with the proceeds of my real estate, as herein before directed to be divided." Under the words here used by the testator, it is clear, that the brothers and sisters only could take, and not the brothers' and sisters' children, thus restricting the word "heir" to its natural and appropriate signification; from which, it can be converted into a word of purchase, only by the clear and controlling intent of the testator. This *542 construction is further supported by those words which require a distribution of the proceeds of the real estate equally, share and share alike, to the legatees; a distribution which could not take place per stirpes, or in the event of one or more brothers surviving, and the death of the rest, leaving issue, living at the death of the son.
On this point, therefore, I concur with the Supreme Court of Pennsylvania; and only regret that I cannot concur both with that Court and this on the other bequest.
Upon the question so solemnly pressed upon this Court in the argument, how far the decision of the Court of Pennsylvania ought to have been considered as obligatory on this Court, I would be understood as entertaining the following views: As precedents entitled to high respect, the decisions of the State Courts will always be considered; and in all cases of local law, we acknowledge an established and uniform course of decisions of the State Courts, in the respective States, as the law of this Court; that is to say, that such decisions will be as obligatory upon this Court as they would be acknowledged to be in their own Courts. But a single decision on the construction of a will, cannot be acknowledged as of binding efficacy, however it may be respected as a precedent. In the present instance, I feel myself sustained in my opinion upon the legacy to A.Y., by the opinion of one of the three learned Judges who composed the State Court.
Judgment affirmed.